C.I.T. FINANCIAL SERVICES, Appellee,

v.

PREMIER CORPORATION, Defendant,

and

Kemp Whisenhunt, Defendant,

and

BancOklahoma Agri-Service, Corporation, Third-Party Defendant/Appellant.

No. 63504.

Supreme Court of Oklahoma.

Oct. 20, 1987.

As Corrected Oct. 27, 1987.

Rehearing Denied Jan. 19, 1988.

C.S. Lewis, III, William C. Connor, Robinson, Boese & Davidson, Tulsa, for third-party defendant/appellant.

Larry L. Field, Tryon & Field, Guymon, for appellee.

SUMMERS, Justice.

The occupant of a double wide mobile home went bankrupt. This lawsuit is between two creditors, each claiming a lien against the mobile home. If we determine the mobile home to be personal property then the original purchase money lender will prevail unless its lien has lapsed. If we determine it to be a part of the real estate then the later mortgagee (who had no notice of the earlier transaction) can get in ahead of the original lender. We hold as a matter of law upon the undisputed facts of this case that the mobile home became a part of the realty, and that the later mortgagee is not bound by the original purchaser's agreement that the property would remain as personal property.

The essential facts are these. On December 29, 1978 Premier Corporation purchased a mobile home in which C.I.T. Financial Services (plaintiff and appellee) took a security interest by assignment of the installment sales contract. In that contract Premier agreed not to make the mobile home a part of any real estate. C.I.T. recorded its financing statement (U.C.C. 1) in the county treasurer's office, but it did not record the sales contract (with the above mentioned provision) nor did it attempt to comply with the filing requirements where one takes a security interest in fixtures.[1]

Premier placed the mobile home on land which it owned. It affixed it to a foundation of poured cement footings, cinder blocks, and metal skirting. It was so attached with bolts and steel straps, and, according to plaintiff's witness, an anchor in the ground. The wheels were removed. Front and back concrete steps were attached. The home was hooked up to gas, electricity, water, and telephone lines, and to a septic tank. It contains 1960 square feet, and has never been removed from its foundation.

Premier sold the land and the home as a farm and farm house to the Whisenhunts who, in 1980, mortgaged it all to the BancOklahoma Agri–Service Corporation (defendant and appellant) which in turn, properly recorded its mortgage.

---

1.  12A O.S.1981 § 9–402 states in part:
    "When the financing statement covers ... fixtures the statement must also contain a description of the real estate concerned."

When the Whisenhunts went bankrupt in 1982 the Bankruptcy Court confirmed a settlement which let the property go back to BancOklahoma in satisfaction of its mortgage.

In 1983 C.I.T. sued BancOklahoma in replevin, asserting its prior security interest on the theory that the mobile home was personal property. The trial court agreed and the Court of Appeals affirmed. On certiorari we now reverse.

The legal status of a pre-fabricated home under these circumstances is a question of first impression for this court. The basic question is simply this: Must the law treat this mobile home as real property or as personal property? There is a subordinate question as to whether C.I.T.'s lien, filed in February 1979, lapsed after five years under 12A O.S.1981 § 9–403(2), but because of our disposition of the first question we need not address the second.

60 O.S.1981 § 7 states:

A thing is deemed to be affixed to land when it is attached to it by roots, as in case of trees, lines, or shrubs, or embedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, by means of cement, plaster, nails, bolts or screws.

This court has identified three factors to consider in determining whether an item is a fixture and thus not removable: (1) The actual or constructive annexation to the realty, or something appurtenant thereto, (2) the appropriateness to the use or purpose of that part of the realty with which it is connected, and (3) the intention of the party making the annexation to make it a permanent accession to the freehold. *United Benefit Life Insurance Co. v. Norman Lumber Company*, 484 P.2d 527 (Okl.1971); *Hartford Fire Insurance Company v. Balch*, 350 P.2d 514 (Okl.1960); *Gray v. Prudential Ins. Co. of America*, 182 Okl. 342, 77 P.2d 563 (1938).

BancOklahoma urges reliance on *United Benefit Life Insurance Co. v. Norman Lumber Company*, supra, wherein we considered whether carpet and carpet pads attached to a concrete slab were personalty or permanent fixtures. In holding that the carpet and pads were permanent fixtures we relied on the fact that the glue used to hold down the carpet was a long lasting glue and tacks were used with great frequency. C.I.T. relies on *Hartford Fire Ins. Co. v. Balch*, supra, another carpet case, but which came to the opposite result. Because of the factual disparities neither case can be considered dispositive in this mobile home litigation.

Although there are no Oklahoma decisions determining whether a mobile home affixed to a permanent foundation is a fixture, other courts, applying the three-part test applicable in Oklahoma, have found such homes to be fixtures. The Seventh circuit in considering a case similar to this one stated:

"Physical attachment did occur by means of cinder blocks and a 'c' clamp while connections for electricity, sewage, and natural gas were provided as well." *George v. Commercial Credit Corp.*, 440 F.2d 551, (7th Cir.1971).

The court, interpreting Wisconsin law, held that a mobile home affixed to real estate was a fixture. In *Fink Wemco Corp.*, 4 B.R. 741, 29 U.C.C.Rep. 1431 (Br.Ct.W.D.N.Y.1980), the court found the mobile home to be a fixture, applying the same three-part test applicable in Oklahoma and the Seventh Circuit. Other states that have considered the question have applied the same rationale in determining a mobile home to be a fixture. *Commercial Tp. v. Block 136, Lot 2*, 179 N.J.Super. 307, 431 A.2d 862 (1981); *Hartford National Bank & Trust Co. v. Godin*, 137 Vt. 39, 398 A.2d 286 (1979). In *Hartford* the court found specific evidence of how the mobile home became a fixture.

"Clear intent to make it part of the realty was evidenced by a concrete block foundation, attached steps, a connected septic system, and encasement of the foundation in aluminum foundation siding...." Id 398 A.2d at 287.

On the other hand, in *In Re Gray*, 40 B.R. 429, 434 (W.D.Okl.1984) the Bankruptcy Court for the Western District of Okla-

homa found a mobile home to be personalty because:

"[T]he debtors in the instant case do not own the land on which the mobile home rests.... Nor was there any demonstrable fixation to the realty. There was no additional construction which would hinder future mobility. There was no permanent foundation.... In fact, not even the wheels were removed."

The facts in *In Re Gray* are immediately distinguishable from those in this case.

In addition, 68 O.S.Supp.1985 § 24410 provides:

Manufactured Home—Situs and taxation —Homestead Exemption

A. Subject to the provisions of subsection B of Section 21 of this Act, *a manufactured home which is located on land owned by the owner of a manufactured home shall be listed and assessed in the County in which it is* located for ad valorem taxation, *as real property* pursuant to the provisions of Article 24 of Title 68 of the Oklahoma Statutes. The person owning and residing in such manufactured home may apply for homestead exemption. The County Assessor shall approve the application of such person if all requirements of law for such exemption have been met.

B. *A manufactured home which is located on land not owned by the owner of the manufactured home shall be listed and assessed* in the county in which it is located for ad valorem taxation *as is personal property* pursuant to the provisions of Article 24 of Title 68 of the Oklahoma Statutes. (Emphasis added.)

Thus in Oklahoma the mobile home in contention would clearly be taxable for ad valorem purposes to the owner of the land.

Mobile homes, when permanently attached to the land as the one in this case, have been judicially determined to be real property for purposes of state and local taxation. In the case of *New York Mobile Home Assoc. v. Steckel,* 9 N.Y.2d 533, 215 N.Y.S.2d 487, 175 N.E.2d 151 (1961) the court noted that there existed a rational basis for the legislative classification of mobile homes as real estate for tax purposes. Since the mobile homes are utilized as residences and thus remain stationary, and are connected to water, gas, electrical, sewer, and telephone systems they should, said the court, be considered as being attached to the freehold.

Reexamination of the three-part test mentioned at the outset shows that the first two are easily satisfied here: (1) the actual annexation to the realty was done in a seemingly permanent fashion, and (2) the appropriateness of the use of the annexed property to the land is met by its use as a farm house on the land being farmed. The third item required for consideration is the intent of the annexer, in this case Premier Corporation, the original purchaser.

■ On the intent question C.I.T. places great reliance on the words appearing in the original sales contract: "The commodity will remain personal property and will not become part of my real estate." This instrument, of course, was never filed of record. Neither the purchasing Whisenhunts nor the lender BancOklahoma were on notice of it. The language itself is on the back and unsigned side of a form containing approximately 12 inches × 8 inches of single spaced small print. Although a court would normally enforce such a provision as between the parties to the agreement, such provision is of de minimus effect in determining an issue between third parties not bound thereby.

That the provision is not binding on the parties here is abundantly clear. In *Continental Gin Co. v. Sims,* 103 Okl. 191, 229 P. 818 (1924) and *Great Western Manufacturing Co. v. Bathgate,* 15 Okl. 87, 79 P. 903 (1905) we held that a contract provision providing that a chattel not become a fixture is binding only upon parties to the agreement and those having notice of it. Other jurisdictions which are in accord are *Leawood National Bank of Kansas City v. City National Bank & Trust Co. of Kansas City,* 474 S.W.2d 641 (Mo.Ct.App. 1971), *Johnson v. Hicks,* 51 Or.App. 667, 626 P.2d 938 (1981), *Burbridge v. Therrell,* 110 Fla. 6, 148 So. 204 (1933), *Union Bank & Trust Co. v. Fred W. Wolf Co.,* 114 Tenn. 255, 86 S.W. 310 (1905).

938

Even though an item is unquestionably affixed to the real estate and is a fixture, contracting parties are free to agree that it will be treated as personalty and therefore not be subject to a mortgage on the real estate. However, in such cases we must conclude: (1) the agreement has no binding effect on the rights of third parties without notice; and (2) in deciding the rights of third parties without notice, the determination as to whether the owner intended to create a fixture must be made by *objectively* examining the chattel's affixation to real property.

Although on its face the provision might be admissible as having some relevance on the first owner's intent, it cannot be considered in these circumstances as having any probative value as against a third party lender not on notice.

Considering (1) the manner by which the mobile home was affixed to the foundation and the earth, (2) the use to which it was put, and (3) what we perceive to have been the intent of the first owner in taking the objective, physical actions present in securing the property to the land, we conclude that as a matter of law the test is met, and the mobile home must be adjudged a fixture to the real estate, and not a mere chattel. We need not address the alleged statutory time-lapse of the plaintiff's lien.

Certiorari having previously been granted the opinion of the Court of Appeals is vacated. The judgment is reversed and the case remanded to the District Court of Cimmarron County with instructions to enter judgment for the defendant BancOklahoma Agri–Service Corporation.

DOOLIN, C.J., and HODGES, LAVENDER, OPALA, WILSON, KAUGER and SUMMERS, JJ., concur.

HARGRAVE, V.C.J., and SIMMS, J., dissent.